IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Criminal Case No. 22-cr-00210-LKG |
| DENNIS ANTHONY GOSS, | ) |
| | ) Dated:  December 20, 2024 |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S PRETRIAL MOTIONS**

**I.    INTRODUCTION**

The Defendant, Dennis Anthony Goss, has filed a motion to suppress evidence (ECF No. 41) and a motion to dismiss the Indictment under the Speedy Trial Act (ECF No. 109).  These motions are fully briefed.  ECF Nos. 41, 45, 46, 61, 98, 100, 109, 118 and 121.  The Court held hearings on these motions on July 11, 2024, and December 18, 2024.  ECF Nos. 104, 126.  For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** Mr. Goss' motion to suppress (ECF No. 41); (2) **GRANTS** Mr. Goss' motion to dismiss the Indictment under the Speedy Trial Act (ECF No. 109); and (3) **DISMISSES** the Indictment **WITHOUT PREJUDICE**.

**II.    BACKGROUND AND PROCEDURAL HISTORY**[1]

As background, on June 15, 2022, a Grand Jury sitting in the District of Maryland returned an Indictment in the above-captioned criminal matter, charging the Defendant, Dennis Anthony Goss, with one count of felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  ECF No. 1.  On August 10, 2022, Mr. Goss appeared before the Court for an initial appearance, arraignment and detention hearing, during which he pled not guilty to the offense charged.  ECF No. 11.

---

[1] The facts recited in this memorandum opinion are derived from the Indictment; Mr. Goss' motion to suppress; the Government's response in opposition thereto; and the testimony of Corporal Dennis Smith and Lieutenant Jason Swope, during the July 11, 2024, suppression hearing.  ECF Nos. 1, 41, 45 and 108.

The June 2, 2021, Traffic Stop

As background, the charge against Mr. Goss arises from a June 2, 2021, traffic stop, during which law enforcement officers discovered a loaded handgun inside the glove compartment of his vehicle. *See* ECF No. 45 at 1-2. On June 2, 2021, at approximately 9:15 p.m., several officers from the Prince George's County, Maryland Police Department were on patrol in the area of Chillum Road in Hyattsville, Maryland. ECF No. 108 at 116:23-117:19. While on patrol in an unmarked cruiser, Corporal Dennis Smith observed a black Chevy Impala bearing a West Virginia temporary tag, which was being driven by Mr. Goss. *Id*. at 119:13-18; 124:15-19; 133:16-17. Corporal Smith observed that the vehicle had an inoperable brake light and window tint on the rear and back side of the vehicle, in violation of Maryland motor vehicle laws. *Id*. at 120:10-121:7. In addition, Corporal Smith observed the vehicle drive aggressively, by straddling the center lane and following other vehicles too closely. *Id*. at 124:20-125:8; 126:4-7; 139:5-24. And so, Corporal Smith testified that, based on the observed traffic violations, he and the other officers on patrol attempted to conduct a traffic stop. *Id*. at 126:4-9.

Mr. Goss did not immediately stop his vehicle. *Id*. at 86:24-87:7; 126:10-21. While driving alongside the vehicle, Corporal Smith observed Mr. Goss "moving around in the car, and . . . reaching over the center console area" towards the glove compartment. *Id*. at 128:15-20.

Mr. Goss' vehicle eventually came to a stop, at which point Corporal Smith and a fellow officer approached Mr. Goss' vehicle, told him to turn off the vehicle and had him exit the vehicle. *Id*. at 129:6-11; 129:23-130:1. After Mr. Goss exited the vehicle, Corporal Smith asked him for his license, while a fellow officer conducted a patdown of Mr. Goss. ECF No. 108 at 80:10-11; 129:23-130:8. Mr. Goss informed the officers that he did not have a license. *Id*. at 130:9-10.

Corporal Smith testified that, after stopping Mr. Goss' vehicle, he smelled the odor of marijuana emanating from the vehicle. *Id*. at 130:11-19. Based on the odor of marijuana, the officers conducted a search of the vehicle. *Id*. at 130:20-25.

During the search of Mr. Goss' vehicle, the officers recovered from the glove compartment a black Beretta Model 3032 Tomcat, .32 caliber, semi-automatic pistol loaded with one .32 caliber ammunition cartridge. *Id*. at 80:14-17; 131:21-22; 138:16-23. This handgun and ammunition are the subject of the one-count Indictment in this case, for felon in possession of a

firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  ECF No. 1; ECF No. 45 at 2. The officers also found a bag containing approximately 15 grams of suspected marijuana, suspected MDMA and another firearm in the vehicle's trunk.  ECF No. 41 at 2; ECF No. 45 at 2; ECF No. 108 at 137:3-19.

After the officers found the handgun inside the glove compartment of Mr. Goss' vehicle they placed Mr. Goss in handcuffs.  ECF No. 108 at 131:15-22.  Thereafter, the officers asked Mr. Goss a number of questions, including: (1) whether they would find marijuana in the vehicle; (2) whether his license had been revoked; (3) whether Mr. Goss owned the vehicle; and (4) whether Mr. Goss had previously been arrested.[2]  *Id*. at 132:6-24; 133:13-20; 153:9-154:8. The video evidence before the Court indicates that Mr. Goss responded to these questions.  ECF No. 126.

Notably, after the officers learned that one of the firearms recovered from Mr. Goss' vehicle was registered in another person's name, they asked Mr. Goss if he knew who owned the firearm, and he denied knowledge of the ownership of either firearm.  ECF No. 45 at 3. Thereafter, the officers transported Mr. Goss to the police station and requested a tow truck for his vehicle.  ECF No. 108 at 81:25-82:1; 133:21-25.

Facts Related To The Speedy Trial Act

Relevant to Mr. Goss' motion to dismiss the Indictment, the Court has granted several consent motions to toll the Speedy Trial Act to serve "the ends of justice" in this criminal matter. First, on September 15, 2022, the Government filed a consent motion to exclude the period between August 10, 2022, and September 16, 2022, from the Speedy Trial Act calculation.  ECF No. 18.  The Court granted the motion on September 16, 2022.  ECF No. 19.  Of the 36 days covered by this exclusion, the Court excluded 35 days retroactively.  *Id*.

On October 19, 2022, the Government filed a consent motion to exclude the period between September 16, 2022, and November 14, 2022, from the Speedy Trial Act calculation.

---

[2] The officers also contacted dispatch over the radio to provide the location of the traffic stop, to run the vehicle's license plate and identification number and to run a check on the firearms recovered.  ECF No. 108 at 134:1-8; ECF No. 45 at 3.  The officers learned from dispatch that the vehicle's license plate did not return to a vehicle registered in Maryland or West Virginia.  ECF No. 108 at 135:3-4; 136:25-137:1; *see also* ECF No. 45 at 3.

3

ECF No. 22.  The Court granted the motion the same day.  ECF No. 23.  Of the 58 days covered by this exclusion, the Court excluded 32 days retroactively.  *Id*.

On November 14, 2022, the Government filed a consent motion to exclude the period between November 14, 2022, and December 15, 2022, from the Speedy Trial Act calculation. ECF No. 26.  The Court granted the motion the same day.  ECF No. 27.  Of the 30 days covered by this exclusion, the Court excluded seven days retroactively.  *Id*.

Lastly, on December 21, 2022, the Government filed a consent motion to exclude the period between December 15, 2022, and January 30, 2023, from the Speedy Trial Act calculation.  ECF No. 29.  The Court granted the motion on December 22, 2022.  ECF No. 30. Of the 45 days covered by this exclusion, the Court excluded six days retroactively.  *Id*.

<u>Relevant Procedural History</u>

On March 17, 2023, Mr. Goss filed a filed a motion to suppress evidence.  ECF No. 41. On April 17, 2023, the Government filed a response in opposition to Mr. Goss' motion to suppress.  ECF No. 45.  On May 1, 2023, Mr. Goss filed a reply brief.  ECF No. 46.  The Government filed a sur-reply on May 18, 2023.  ECF No. 61.  On June 27, 2024, Mr. Goss filed a motion for leave to file supplemental authority relevant to the motion to suppress.  ECF No. 98. On July 2, 2024, the Government also filed a motion for leave to file supplemental authority. ECF No. 100.

On September 13, 2024, Mr. Goss filed a motion to dismiss the Indictment under the Speedy Trial Act.  ECF No. 109.  On October 8, 2024, the Government filed a response in opposition to Mr. Goss' motion to dismiss.  Mr. Goss filed a reply brief on October 15, 2024. ECF No. 121.

The Court held hearings on these motions on July 11, 2024, and December 18, 2024. ECF Nos. 104, 126.  Mr. Goss' motions having been fully briefed, the Court resolves the pending motions.

**III.    STANDARDS OF DECISION**

    **A.  Traffic Stops And *Carroll* Stops**

The Supreme Court has held that, when law enforcement stops an automobile and detains the vehicle's occupants, the stop constitutes a seizure under the Fourth Amendment.  *Delaware*

4

*v. Prouse*, 440 U.S. 648, 653 (1979); *United States v. Digiovanni*, 650 F.3d 498, 506 (4th Cir. 2011). Warrantless Fourth Amendment seizures are "*per se* unreasonable." *Coolidge v. New Hampshire*, 403 U.S. 443, 454. But it is well-established that an officer may conduct a traffic stop if the officer has reasonable suspicion that a traffic violation has occurred, or that criminal activity is afoot.[3] *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002).

In this regard, the Fourth Circuit has held that, if an officer observes a vehicle commit a traffic violation, he is justified in detaining the offending vehicle. *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008). The officer may stop the vehicle "for long enough to issue the driver a citation and determine that the driver is entitled to operate" the vehicle. *Id*. at 337. But, if the officer seeks to prolong the traffic stop to allow for investigation into matters beyond the scope of the initial stop, the officer must have reasonable suspicion of other criminal activity or the driver's consent. *Id*. at 336. And so, the Court considers the totality of the circumstances when determining an officer's reasonableness. *United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018) (citing *Arvizu*, 534 U.S. at 273).

### B. Warrantless Searches

A warrantless search may be reasonable if one of "a few specifically established and well-delineated exceptions" applies. *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). The automobile exception to the Fourth Amendment's warrant requirement was established in *Carroll v. United States*. In *Carroll*, the Supreme Court held that "a warrantless search of a vehicle is not unreasonable, and does not violate the Fourth Amendment, if the police have probable cause to believe that the vehicle has contraband." 267 U.S. 132, 158-59 (1925). In this regard, the scope of a search conducted pursuant to the automobile exception "is no broader and no narrower than a magistrate could legitimately authorize by warrant." *United States v. Ross*, 456 U.S. 798, 825 (1982). And so, if a law enforcement officer has lawfully stopped a vehicle and then has probable cause of a crime, such

---

[3] The standard for reasonable suspicion is "less demanding" than that for probable cause; it requires "at least a minimal level of objective justification." *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004). An officer has reasonable suspicion to make an investigatory stop of a vehicle when there are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the belief that criminal activity is afoot." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

probable cause "justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id*.

Relevant to this case, the Fourth Circuit has held that the smell of marijuana provides an officer with probable cause to search the vehicle from which the odor emanates. *See, e.g.*, *United States v. Lewis*, 606 F.3d 193, 198 (4th Cir. 2010) ("When [the defendant] rolled down his window to [provide his identification], [the officer] smelled the odor of marijuana emanating from the vehicle. At that point, the officers possessed probable cause to search the vehicle."); *United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004) ("[T]he odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place. . . . While smelling marijuana does not assure that marijuana is still present, the odor certainly provides probable cause to believe that it is.").

### C. *Miranda* Warnings

The Government may not use statements, whether exculpatory or inculpatory, stemming from the custodial interrogation of a defendant unless the Government demonstrates that procedural safeguards were used to secure the privilege against self-incrimination under the Fifth Amendment. *Miranda v. Arizona*, 384 U.S. 436 (1967). A custodial interrogation occurs when law enforcement has initiated questioning of a criminal defendant after taking that individual into custody or otherwise depriving him of his freedom from action in any significant way. *Id*. at 444. And so, whether a defendant is "in custody" is determined objectively; an officer's subjective and undisclosed view of whether a suspect is in custody is irrelevant. *Stansbury v. California*, 511 U.S. 318, 323 (1994). An interrogation occurs if law enforcement officers expressly ask a defendant questions or if they use words or take actions that they should know are reasonably likely to elicit an incriminating response from the subject. *Rhode Island v. Innis*, 446 U.S. 291, 298-99 (1990).

### D. The Sixth Amendment And The Speedy Trial Act

The Sixth Amendment guarantees all criminal defendants "the right to a speedy and public trial." U.S. Const., amend. VI. When determining whether a defendant's constitutional right to a speedy trial has been violated, the Court must balance four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). And so, "[t]o prevail on a speedy

trial claim, a defendant must 'establish that on balance, [the] four separate factors weigh in his favor.'" *United States v. Pair*, 84 F.4th 577, 589 (4th Cir. 2023) (quoting *United States v. Hall*, 551 F.3d 257, 271 (4th Cir. 2009)).

The Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-3174, "generally requires a federal criminal trial to begin within 70 days after a defendant is charged or makes an initial appearance." *Zedner v. United States*, 547 U.S. 489, 492 (2006) (citing 18 U.S.C. § 3162(c)(1)). And so, if a defendant is not brought to trial within that timeframe, "the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2).

In this regard, the Speedy Trial Act "contains a detailed scheme under which certain significant periods of delay are not counted." *Zedner*, 547 U.S. at 492. But, "[s]ome of these delays are excludable only if the district court makes certain findings enumerated in the statute." *Bloate v. United States*, 559 U.S. 196, 203 (2010) (citing 18 U.S.C. § 3161(h)(7)); *see also United States v. Hart*, 91 F.4th 732, 739-40 (4th Cir. 2024). Relevant to the pending motion to dismiss, the Speedy Trial Act provides that the Court "shall" exclude:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3167(h)(7)(A). The statute further provides that:

> No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

*Id.*[4]

---

[4] In deciding whether to grant such a continuance, the Court "shall consider" whether the failure to do so "would be likely to make a continuation of [the case] impossible, or result in a miscarriage of justice. 18 U.S.C. § 3167(h)(7)(B)(i). The Court must also consider "whether the case is complex or unusual, whether counsel need[s] additional time to prepare effectively, and whether delay is necessary to ensure continuity of counsel." *United States v. Henry*, 528 F.3d 300, 303-04 (4th Cir. 2008); *see also* 18 U.S.C.

Upon the finding of a violation of the Speedy Trial Act and the determination that the Indictment must be dismissed, the Court "turns to whether the dismissal will be with or without prejudice." *United States v. Berndt*, 2024 WL 1886122, at *3 (D. Md. Apr. 29, 2024); *see also Bloate*, 559 U.S. at 214 (noting that the Court "may dismiss the charges without prejudice, thus allowing the Government to refile charges or reindict the defendant"). The Court considers three factors when determining whether to dismiss the case with, or without, prejudice: (1) the seriousness of the offense; (2) the facts and circumstances of the case leading to the dismissal; and (3) "the impact of reprosecution on the . . . administration of justice." 18 U.S.C. § 3162(a)(2). In addition, while "not dispositive, 'the presence or absence of prejudice to the defendant' is also 'relevant . . . ' and may be considered in conjunction with the third factor." *United States v. Williams*, 665 F. App'x 290, 292 n.1 (4th Cir. 2016) (quoting *United States v. Taylor*, 487 U.S. 326, 334 (1988)).

**E.  Judicial Estoppel**

Lastly, the doctrine of judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. *See, e.g.*, *United States v. Brooks*, 2024 WL 2302325, at *16 (D. Md. May 21, 2024); *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 457 (4th Cir. 2017); *Martineau v. Wier*, 934 F.3d 385, 393 (4th Cir. 2019); *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007). Specifically, "where a party assumed a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the" opposing party. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). And so, as an equitable doctrine, judicial estoppel is "designed to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Martineau*, 934 F.3d at 393 (quoting *New Hampshire*, 532 U.S. at 749-50).

The Supreme Court has acknowledged that the doctrine of judicial estoppel could, in certain circumstances, bar a criminal defendant from asserting a violation of his rights under the

---

§ 3167(h)(7)(B)(ii)-(iv). In addition, the Court "must 'set forth, in the record of the case, either orally or in writing, its reasons' for finding that the ends of justice outweigh the need for a speedy trial." *United States v. Pair*, 84 F.4th 577, 589 (4th Cir. 2023) (quoting 18 U.S.C. § 3167(h)(7)(A)).

Speedy Trial Act. *See Zedner*, 547 U.S. at 504-06; *see also United States v. Velasquez*, 52 F.4th 133, 140-42 (4th Cir. 2022). When deciding whether judicial estoppel is appropriate within the context of an alleged violation of the Speedy Trial Act, the Court's decision is typically informed by three factors: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading the Court to accept the party's earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Zedner*, 547 U.S. at 504 (citing *New Hampshire*, 532 U.S. at 750-51).

IV.    **ANALYSIS**

    **A. The Court Grants-In-Part The Defendant's Motion To Suppress**

Mr. Goss has moved to suppress: (1) tangible and derivative evidence obtained from the June 2, 2021, traffic stop and search of his vehicle and (2) certain statements that he made to law enforcement before receiving a *Miranda* warning. ECF No. 41. In this regard, Mr. Goss argues that the Court should suppress the evidence recovered from his vehicle during the June 2, 2021, traffic stop, because: (1) the officers lacked probable cause to initiate the traffic stop and (2) the purported odor of marijuana emanating from his vehicle did not constitute probable cause to conduct a warrantless search of his vehicle. *Id*. at 2-6. Mr. Goss also argues that the Court should suppress certain statements that he made to law enforcement, because the officers failed to give him a *Miranda* warning before questioning him. *Id*. at 6.

The Government counters that the suppression of this evidence is not warranted, because: (1) the officers had reasonable suspicion to stop Mr. Goss' vehicle, due to his aggressive driving and the vehicle's inoperable brake light and illegal window tint; (2) Fourth Circuit precedent establishes that the smell of marijuana, alone, provides probable cause to search a vehicle; and (3) the statements made by Mr. Goss during the traffic stop were "part of a casual conversation" and "were not received in violation of his *Miranda* rights." ECF No. 45 at 3-7.

For the reasons that follow, and stated during the December 18, 2024, hearing, the evidence before the Court shows that the officers had reasonable suspicion to stop Mr. Goss' vehicle for suspected violations of Maryland motor vehicle laws. The evidence also shows that the officers had probable cause to search Mr. Goss' vehicle, due to the odor of marijuana emanating from the vehicle. Lastly, the evidence before the Court shows that the officers conducted a custodial interrogation of Mr. Goss, without first providing a *Miranda* warning, and

9

that Mr. Goss did not waive his right to receive such a warning. And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART Mr. Goss' motion to suppress and (2) SUPPRESSES the statements made by Mr. Goss during the June 2, 2021, traffic stop, regarding his criminal history, his ownership of the firearm in his vehicle and whether there was marijuana in his vehicle.

### 1. The Initial Traffic Stop Was Supported By Reasonable Suspicion

As an initial matter, the Court is satisfied that the investigatory stop of Mr. Goss' vehicle was supported by reasonable suspicion, because the evidence before the Court shows that the officers observed Mr. Goss violate Maryland motor vehicle laws prior to conducting the stop. It is well-established that an officer may conduct a traffic stop, if the officer has reasonable suspicion that a traffic violation has occurred, or that criminal activity is afoot. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002).

In this case, the evidence before the Court shows that, before effectuating a traffic stop, Corporal Smith observed that Mr. Goss' vehicle had an inoperable brake light and window tint on the rear and back side of the vehicle, in violation of Maryland motor vehicle laws. ECF No. 108 at 120:10-121:7. In addition, Corporal Smith observed Mr. Goss' vehicle driving aggressively, by straddling the center lane and following other vehicles too closely. *Id*. at 124:20-125:8; 126:4-7; 139:5-24. And so, Corporal Smith had reasonable suspicion that a traffic violation had occurred, or that criminal activity was afoot, with regards to Mr. Goss' vehicle. *See Berekmer*, 468 U.S. at 439; *Arvizu*, 534 U.S. at 273.

### 2. The Officers Had Probable Cause To Search The Defendant's Vehicle

The evidence before the Court also shows that the officers had probable cause to search Mr. Goss' vehicle after effectuating the traffic stop, because Corporal Smith detected the odor of marijuana emanating from the vehicle. "[A] warrantless search of a vehicle is not unreasonable, and does not violate the Fourth Amendment, if the police have probable cause to believe that the vehicle has contraband." *Carroll v. United States*, 267 U.S. 132, 158-59 (1925). And so, if a law enforcement officer has lawfully stopped a vehicle and then has probable cause of a crime, such probable cause "justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). In this regard, the Fourth Circuit has held that the smell of marijuana provides law enforcement officers with probable cause to search the vehicle from which the odor emanates. *See, e.g., United States*

10

*v. Lewis*, 606 F.3d 193, 198 (4th Cir. 2010) ("When [the defendant] rolled down his window to [provide his identification], [the officer] smelled the odor of marijuana emanating from the vehicle. At that point, the officers possessed probable cause to search the vehicle."); *United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004) ("[T]he odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place. . . . While smelling marijuana does not assure that marijuana is still present, the odor certainly provides probable cause to believe that it is.").

Here, the evidence before the Court shows that Corporal Smith smelled marijuana emanating from Mr. Goss' vehicle when he exited his cruiser and approached the vehicle. ECF No. 45 at 2; ECF No. 108 at 129:6-11; 129:23-130:1; 130:11-19. Given this, Corporal Smith had probable cause to search Mr. Goss' vehicle for contraband. *Carroll*, 267 U.S. at 158-59; *Lewis*, 606 F.3d at 198; *Humphries*, 372 F.3d at 658. And so, the Court will not suppress the evidence recovered during that search.

### 3. The Officers' Questioning Of The Defendant Violated *Miranda*

While the Court declines to suppress evidence recovered from Mr. Goss' vehicle, Mr. Goss' argument that the Court should suppress certain statements that he made to law enforcement during the June 2, 2021, traffic stop is on firmer ground. It is well-established that the Government may not introduce statements stemming from the custodial interrogation of a defendant, unless it demonstrates that procedural safeguards were used to secure the privilege against self-incrimination under the Fifth Amendment. *Miranda v. Arizona*, 384 U.S. 436 (1967). A custodial interrogation occurs when law enforcement has initiated questioning of a criminal defendant after taking that individual into custody or otherwise depriving him of his freedom from action in any significant way. *Id*. at 444.

In this case, there is no dispute that Mr. Goss was in custody when law enforcement officers asked him several questions during the traffic stop and search of his vehicle. ECF No. 41 at 6; ECF No. 45 at 7. It is also undisputed that the officers did not give Mr. Goss a *Miranda* warning before asking him these questions. ECF No. 41 at 6; ECF No. 108 at 140:3-15. And so, the Court considers whether any of Mr. Goss' statements were made in response to questions designed to elicit an incriminating answer. *Rhode Island v. Innis*, 446 U.S. 291, 298-99 (1990).

The evidence shows that, after the officers found the handgun inside Mr. Goss' vehicle, they placed Mr. Goss in handcuffs and then asked him several questions, including: (1) whether

they would find marijuana in the vehicle; (2) whether his license had been revoked; (3) whether Mr. Goss owned the vehicle; and (4) whether Mr. Goss had previously been arrested. ECF No. 108 at 131:15-22; 132:6-24; 133:13-20; 153:9-154:8. The officers also asked Mr. Goss whether he owned the firearm recovered from his vehicle. ECF No. 104.

While it is difficult to discern Mr. Goss' responses to many of these questions, based on the video evidence provided to the Court, it appears that Mr. Goss answered the officers' questions. ECF No. 126. The Government argues that the officers only engaged in casual conversation with Mr. Goss. ECF No. 45 at 7. But the evidence before the Court makes clear that that the officers asked Mr. Goss specific questions about his criminal history, and connection to the firearm and marijuana recovered during the search of his vehicle, that were reasonably likely to elicit incriminating responses. ECF No. 45 at 7-8; ECF No. 46 at 17-18; ECF No. 108 at 131:15-22; 132:6-24; 133:13-20; 153:9-154:8. The officers were required to provide Mr. Goss with a *Miranda* warning before they engaged in a custodial interrogation on these topics. Because the officers failed to do so, the Court: (1) GRANTS Mr. Goss' motion to suppress his statements on these topics during the custodial interrogation and (2) SUPPRESSES Mr. Goss' statements regarding his criminal history, ownership of the firearm found his vehicle and whether there was marijuana in his vehicle.

### B. The Court Grants The Defendant's Motion To Dismiss And Dismisses The Case Without Prejudice

As a final matter, Mr. Goss has moved to dismiss the Indictment, pursuant to the Speedy Trial Act, because the Court retroactively tolled the Speedy Trial Act for more than 70 days without conducting a contemporaneous ends-of-justice balancing in this case. ECF No. 109 at 5-7. The Government acknowledges this violation of the Speedy Trial Act, but argues that Mr. Goss should be judicially estopped from asserting that his speedy trial rights have been violated here, because: (1) he consented to the Government's tolling motions; (2) he now takes a position regarding the tolling of the Speedy Trial Act that is inconsistent with his prior position in this case; and (3) he has benefited from the continuances of the trial date in this matter. ECF No. 118 at 5-9. In addition, the Government argues that the Court should dismiss this case without prejudice, if the Court deems dismissal necessary under the Speedy Trial Act. *Id*. at 9-13.

For the reasons that follow, the Court: (1) GRANTS the Defendant's motion to dismiss and (2) DISMISSES the Indictment WITHOUT PREJUDICE.

The Court observes as an initial matter, that there is no dispute that the Court retroactively tolled the Speedy Trial Act for more than 70 days without first conducting a contemporaneous ends-of-justice balancing.  To grant a speedy trial continuance that would serve "the ends of justice," the Court must "set[] forth in the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."  18 U.S.C. § 3167(h)(7)(A).  It is well-established that the Court must make these findings before it grants an ends-of-justice continuance.  *Zedner*, 547 U.S. at 506; *see also United States v. Hart*, 91 F.4th 732, 739-40 (4th Cir. 2024) (quoting *United States v. Keith*, 42 F.3d 234, 237 (4th Cir. 1994) ("[I]t first must be 'clear from the record that the court conducted the mandatory balancing contemporaneously with the granting of the continuance.'  And, second, the [C]ourt must set forth the reasons for its finding no later than when it rules on a defendant's motion to dismiss.").  In this case, the Court excluded time under the Speedy Trial Act to serve "the ends of justice," which included 80 days that were retroactively tolled.  ECF Nos. 19, 23, 27, 30.  Because the Court did not conduct contemporaneous ends-of-justice balancing with respect to the 80 days that had already occurred before determining to exclude this time under the Speedy Trial Act, this time was improperly excluded from the calculation of time under the Speedy Trial Act.

While it is undisputed that the Defendant consented to the tollings at issue, the Government argues without persuasion that the doctrine of judicial estoppel should be applied in this case.  When deciding whether judicial estoppel is appropriate within the context of an alleged violation of the Speedy Trial Act, the Court considers three factors: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading the Court to accept the party's earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Zedner*, 547 U.S. at 504 (citing *New Hampshire*, 532 U.S. at 750-51).  But in this case, Mr. Goss' position that the Speedy Trial Act has been violated, due to the Court retroactively tolling the Speedy Trial Act for more than 70 days without conducting a contemporaneous ends-of-justice balancing, is not "clearly inconsistent with [an] earlier position" taken by the Defense in this matter.  *Id*.

Neither party has previously addressed the issue of whether the Speedy Trial Act authorized the Court to retroactively exclude time without contemporaneous ends-of-justice

balancing. *See* ECF Nos. 18, 22, 26, 29. Given this, Mr. Goss' position in his motion to dismiss is not inconsistent with any prior position that he has taken in this case.

For this reason, the second and third factors that the Court considers when determining whether to apply the doctrine of judicial estoppel do not weigh in favor of applying the doctrine in this case. Given this, the Court will not estop Mr. Goss from pursuing his motion to dismiss the Indictment under the Speedy Trial Act. And so, the Court must DISMISS the Indictment. *Zedner*, 547 U.S. at 504-06. The Court will do so, WITHOUT PREJUDICE to the Government, given the seriousness of the offense in this case, the facts and circumstances leading to the dismissal of the Indictment and the absence of prejudice to the defendant. *See United States v. Williams*, 665 F. App'x 290, 292 n.1 (4th Cir. 2016) (quoting *United States v. Taylor*, 487 U.S. 326, 334 (1988)).

### V.   CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS-in-PART and DENIES-in-PART** Mr. Goss' motion to suppress evidence (ECF No. 41). The Court **SUPPRESSES** the statements made by Mr. Goss during the June 2, 2021, traffic stop regarding his criminal history, ownership of the firearm in his vehicle and whether there was marijuana in his vehicle.

(2) **GRANTS** Mr. Goss' motion to dismiss the Indictment under the Speedy Trial Act (ECF No. 109); and

(3) **DISMISSES** the Indictment **WITHOUT PREJUDICE**.

The parties shall **MEET AND CONFER** and **FILE** a joint status report **on or before January 31, 2025**, stating their respective views regarding how this matter should proceed.

A separate Order issued on December 19, 2024 (ECF No. 130).

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby<br>
LYDIA KAY GRIGGSBY<br>
United States District Judge